# FIRST STATE BUILDING AND LOAN ASSOCIATION, Mountain Home, Arkansas *v.* ARKANSAS SAVINGS AND LOAN ASSOCIATION BOARD and HOME SAVINGS AND LOAN ASSOCIATION

76-174                                                549 S.W. 2d 274

## Opinion delivered April 11, 1977 (In Banc)
[Rehearing denied May 16, 1977.]

*Roy E. Danuser* and *Catlett & Henderson,* for appellant.

*John E. Pruniski III* and *Lester & Shults,* for appellees.

HAROLD SHARPE, Special Justice. This appeal seeks reversal of the Order of the Pulaski County Circuit Court affirming the grant of a savings and loan charter to Appellee, Home Savings and Loan Association, by Appellee, Arkansas Savings and Loan Association Board. For the purposes of brevity, Appellee, Arkansas Savings and Loan Association Board is hereinafter referred to as "The Board", and Appellee, Home Savings and Loan Association, is hereinafter referred to as "The Association".

Although this matter has previously been before this Court (257 Ark. 599), because of the length of time involved and the complexity of the sequence of events, we briefly summarize the proceedings. On May 1, 1973, The Association filed its application with The Board for a charter for a savings and loan association to be located in Mountain Home, Arkansas. After the taking of voluminous testimony from numerous witnesses, by deposition and ore tenus, The Board granted the application on December 26, 1973. Thereafter, appeals were taken to the Circuit Court of Pulaski County and to this Court. On February 10, 1975, this Court reversed and remanded for lack of specific findings by The Board. On May 27, 1975, The Board made new findings of fact and declarations of law, which, on November 3, 1975, the Circuit Judge found deficient, and again the matter was remanded to The Board. On November 18, 1975, new findings of fact and declarations of law were made by The Board. The matter was again taken to the Circuit Judge of Pulaski County, who entered his Order affirming the grant of the charter. This appeal follows.

Before considering the merits of the case, we make specific reference to Rule 9 (b) of the Rules of the Court. As the Rule clearly states, the Statement of the Case to appear in Appellant's Brief is to be made without argument. The purpose of the Statement of the Case is to give this Court, which is familiar with neither the facts nor proceedings of the case, an unbiased, impartial, and factual overview and synopsis of the nature of the case and the proceedings below. It is not the place for argument.

Appellant urges three points for reversal:

(1) That the findings of facts by The Board did not comply with the requirements of Ark. Stat. Ann. Sec. 67-1824, on the question of management;
(2) That the record contains no substantial evidence to support the Order of The Board granting the application;
(3) That the circuit Court erred in holding that The Board need not find a present need for a new savings and loan association in the area.

We deal with these contentions as they are presented.

For its first point for reversal, Appellant argues that Ark. Stat. Ann. Sec. 67-1824 (2) (Supp. 1975), requires that The Board make a specific finding, separate and apart from its findings relating to the directors and officers of the applicant, that the applicant will have qualified full time management, and that the factual basis for this finding be set out in detail by The Board in its Order. We disagree. The statute provides as follows:

67-1824. Approval of application for charter. — The Board shall not approve any charter application unless the incorporators establish and the Board shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing, and the official records of the Supervisor that:

. . .

(2) The character, responsibility, and general fitness of the persons named in the articles of incorporation and

who will serve as directors and officers of such association are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this act and the proposed association will have qualified full time management.

If we read the statute as urged by Appellant, any applicant would necessarily be required to hire or make arrangements for its manager before the charter is issued, so that his name may be submitted with the application, and his qualifications determined by the full board. As we said in *Morrilton Federal Savings and Loan Association* v. *Arkansas Valley Savings and Loan Association*, 243 Ark. 627, 420 S.W. 2d 923 (1967), we do not read the statute as requiring that the manager be employed before the charter is issued. Such a requirement would be entirely impractical. The procedure to secure a savings and loan charter is lengthy, and either the manager or the members of the proposed association would be required to bear the risk of rejection of the application. In the case at bar, for example, the proposed manager would have been held in limbo, supposedly at the expense of the applicant, since 1973.

Rather, we interpret the statute to require The Board's finding be that the character, responsibility, and general fitness of the proposed directors and officers are such that the proposed association will have qualified full time management. In this case, no serious question has been raised as to the proposed directors and officers who will select the full time manager. Thus, we find that the statutory requirement has been met.

With such an interpretation of the statute, it is unnecessary for us to deal with Appellant's contention that submission of the name of the manager, once hired, to the supervisor is a delegation of the Board's statutory authority to the supervisor.

For its second contention, Appellant urges that the record does not contain substantial evidence to support The Board's finding of a need of another savings and loan in the Mountain Home area. We affirm The Board's action since there is substantial evidence to support its findings. In addi-

tion we consider the evidence with all reasonable inferences deducible therefrom in the light most favorable to the Appellees. *First Federal Savings and Loan* v. *Union Federal Savings and Loan*, 257 Ark. 199, 515 S.W. 2d 75 (1974). Whether the evidence of the Appellee or the Appellant weighs more heavily is not a consideration. *Heber Springs Savings and Loan Association* v. *Cleburne County Bank*, 240 Ark. 759, 402 S.W. 2d 636 (1966).

When we review the findings of The Board, we find the evidence to be clearly substantial. The Board found that the proposed service area consists of six counties, with a population of approximately 52,000, and with a rapid growth factor, both in number of people and economically. Bank deposits increased by 428 percent during the decade of the 1960's. From December, 1972, to June 30, 1973, the total assets in the three financial institutions with home offices in Mountain Home increased to in excess of $96,000,000.00, and during the same period, loans increased by 20.7 percent, to over $68,000,000.00. Overall, The Board found the area to be served to be an area of rapid demographic and economic growth, increasing in population, and with a progressive economy.

Finally, Appellant contends that the lower Court erred in rejecting its argument that, for The Board's grant to be sustained, there must be a finding that there is a *present* need for a savings and loan association in the area. Essentially, Appellant's argument is boiled down to be that the proof heard by The Board in 1973 had no application in 1975, due to changing economic and social conditions. Our rejection of this argument is based on practical considerations. Because of the tremendous growth of litigation and the physical limitations of the Courts, there is a lapse of time between decisions of an administrative tribunal or trial Court and the Appellate Court. At present, we know of no way to avoid the delay, but have long worked toward judicial economy. To hold that this decision must be reversed for stale evidence would only prolong the litigation, and open the door for an endless cycle of appeals and rehearings of cases in this type. It has already been four years since the original filing of the application. It is not unreasonable to say that, if we were to remand for the taking of new proof, another four year cycle would be forthcoming. We also note that this argument was not raised before The Board, but only after the question had

reached the Courts. Therefore, any such argument is deemed to have been waived.

For the reasons hereinabove stated, the judgment is affirmed.

Special Chief Justice COMER BOYETT and Special Justice R. EUGENE BAILEY join in the majority opinion.

FOGLEMAN, J., concurs.

HARRIS, C.J., and BYRD and HOLT, JJ., not participating.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result. I do not agree that the statutory construction urged by appellant would require that the name of the full-time manager be submitted with the application before the Board could find that the applicant would have full-time management. This finding could be assured by other means, one of which is approval by the Board, when the manager is employed. See *First Federal Savings & Loan Ass'n. v. Arkansas Savings & Loan Ass'n. Board*, 257 Ark. 985, 521 S.W. 2d 542. I felt that the construction of the act urged by appellant was proper, but recognize that the matter is subject to argument and defer to the majority.

I disagree with the position that, whenever the matter is before the Board for factual determination, changed conditions are never pertinent. Little, if any, of the data or opinions in this case could be related to the changed situation that arose from the establishment of a full-time, full-service branch of another savings and loan association in Mountain Home. This is a dangerous precedent which could seriously affect not only new permittees, but existing financial institutions and ultimately the general public. I cannot join in that portion of the majority opinion. But it seems to me that appellant had the burden of offering evidence before the Board pertaining to the potential impact of the new institution when the Board had its public hearing on November 27, 1973, or at least seeking the opportunity to support by evidence any impact unfavorable to the applicant that

appellant alleged would result. Certainly, after the lapse of time involved, the court would not abuse its discretion by refusing to hear evidence on this question or to remand the matter to the Board to do so.

I must observe that most of the delay in this matter has been due to the inability (I trust not unwillingness) of the Board to make proper findings of fact to support its conclusions.

I concur in the result.