SLIP OPINION

Cite as 2016 Ark. App. 476

# ARKANSAS COURT OF APPEALS

DIVISIONS I and IV
**No.** CV-15-1039

| | |
|---|---|
| ARKANSAS STATE BOARD OF LICENSURE FOR PROFESSIONAL ENGINEERS AND PROFESSIONAL SURVEYORS<br><br>APPELLANT<br><br>V.<br><br>ROBERT ALLAN CALLICOTT<br>APPELLEE | **Opinion Delivered** October 19, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION<br>[NO. CV-2014-2542]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br>REVERSED AND REMANDED |

## M. MICHAEL KINARD, Judge

The Arkansas State Board of Licensure for Professional Engineers and Professional Surveyors ("Board") appeals from an order of the circuit court that reversed the Board's decision to fine and permanently revoke the surveyor's license of Robert Allan Callicott. The circuit court ruled that the Board's findings of ethical violations were not supported by substantial evidence, that "the offense alleged was vague," and that the punishment imposed was unduly harsh. The Board argues that the circuit court erred in reversing the Board's decision because the Board's findings were supported by substantial evidence and the Board's decision, including its choice of penalty, was within its authority and not arbitrary or capricious. Mr. Callicott contests those arguments. He further contends that he was denied due process by the Board because notice of the hearing had not been properly sent to him and that, in any event, the statute and rule on which the Board based its decision are

unconstitutionally vague. For the reasons explained below, we reverse and remand for the Board to make specific findings of fact and conclusions of law.

In June 2013, Charles McGowan lodged with the Board a complaint against Mr. Callicott, a licensed surveyor. McGowan alleged that he had paid Callicott $1000 ten weeks earlier, in April 2013, to perform a survey. He alleged that the work had not been performed and that Callicott had not responded to McGowan's phone calls, letters, and emails. The Board notified Callicott of the complaint. Callicott responded in writing, stating that he had started working on the job immediately upon being hired and had "devoted a great deal of time and energy to the project"; offering his explanation for the delay in finishing the work; and indicating that there had been no time limit set for the completion of the survey. The Board then further corresponded with and interviewed McGowan and Callicott.

Eventually, it was decided that a formal hearing would be held to determine whether Callicott had violated Arkansas Code Annotated sections 17-48-101 et seq. (Supp. 2015) or the rules of the Board. Specifically, the Board charged that Callicott (1) had engaged in "dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public, in violation of Arkansas Code Annotated [section] 17-48-205"; (2) had failed "to faithfully serve the legitimate interest of his client, in violation of the preamble of the Rules of Professional Conduct"; and (3) had failed "to provide information requested by the Board as a result of a formal or informal complaint to the Board, in violation of Arkansas Code Annotated [section] 17-48-205." Notice of the allegations and the May 13, 2014,

scheduled hearing were sent to Callicott by both certified and regular mail in April 2014.[1]

Callicott did not appear at the hearing before the Board, but McGowan did, and the hearing

went forward.

After the hearing, the Board entered a written order in June 2014. The Board found

that McGowan engaged Callicott to perform a survey for $1000, that McGowan gave

Callicott a check for $1000, and that, during the investigation, Callicott "refused to provide

pertinent information requested by the Board's investigator." Additionally, the Board

"found" that McGowan "asserts" that the check was cashed and that the work was not

completed; the Board stated that these two asserted "fact[s]" were not disputed by Callicott.

The last remaining "finding" in the Board's order was that McGowan "asserts" that Callicott

made no attempt to contact him and did not respond to McGowan's "repeated attempts" to

contact Callicott. The Board then concluded, without any elaboration, that Callicott's

"conduct . . . constitutes" each of the three violations alleged in the notice and quoted in the

preceding paragraph of this opinion. The Board imposed a $1000 fine against Callicott and

revoked his surveyor's license.

In July 2014, Callicott filed his petition seeking judicial review by the circuit court.

*See* Ark. Code Ann. § 25-15-212 (Repl. 2014). Soon thereafter, the circuit court entered an

order staying enforcement of the Board's decision. In September 2015, the circuit court

reversed and set aside the order of the Board. The court held that the Board's findings of

---

[1]The record indicates that the certified mail was returned to the Board, marked "unclaimed." The notice sent by regular mail was not returned.

ethical violations were not supported by substantial evidence, that the offenses alleged were vague, that there was no direct violation of any rule, and that the punishment was unduly harsh. The Board has appealed the circuit court's order to this court.

We cannot, at this time, decide the substantive issues in this case. Rather, the case must first be remanded for the Board to make specific findings of fact and conclusions of law.

Review of administrative agency decisions, by both the circuit court and the appellate court, is limited in scope. Ark. Code Ann. § 25-15-212(g)–(h); *Arkansas State Highway & Transportation Department v. RAM Outdoor Advertising*, 2015 Ark. App. 713, 479 S.W.3d 51. The standard of review to be used by both courts in determining the sufficiency of the evidence is whether there is substantial evidence to support the agency's findings. *RAM Outdoor Advertising, supra.* The appellate court's review is directed not toward the circuit court but toward the decision of the agency. *Id.* When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.* The party challenging the administrative agency's findings has the burden of proving an absence of substantial evidence. *Id.*

In cases decided by courts of record, trial courts are not ordinarily required to state specific findings of fact and conclusions of law. Rather, the appellate court will presume, in the absence of a showing to the contrary, that the trial court acted properly and made the findings of fact necessary to support its judgment. *American States Insurance Co. v. Williams*, 2010 Ark. App. 840; *Jocon, Inc. v. Hoover*, 61 Ark. App. 10, 964 S.W.2d 213 (1998); *Ingram v. Century 21 Caldwell Realty*, 52 Ark. App. 101, 915 S.W.2d 308 (1996); *see First National*

*Bank v. Higginbotham Funeral Service, Inc.*, 36 Ark. App. 65, 818 S.W.2d 583 (1991) (Cracraft, C.J., dissenting).

The same is not true for administrative agencies, however. The Administrative Procedure Act requires that an administrative adjudication be accompanied by specific findings of fact and conclusions of law.[2] Arkansas Code Annotated section 25-15-210 (Repl. 2014) provides in part the following:

> (b)(1) In every case of adjudication, a final decision or order shall be in writing or stated in the record.
>
> (2) A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

The Board must translate testimony and other evidence into findings of fact and then explain how those factual findings support the action taken by the Board. *Barnes v. Arkansas Department of Finance & Administration*, 2010 Ark. App. 436. These requirements have long been seen as important in assuring more careful administrative consideration and in facilitating judicial review. *Voltage Vehicles v. Arkansas Motor Vehicle Commission*, 2012 Ark. 386, 424 S.W.3d 281; *First State Building & Loan Association v. Arkansas Savings & Loan Board*, 257 Ark. 599, 518 S.W.2d 507 (1975). Whether sufficient findings of fact have been made is a threshold question in an appeal from an administrative board. *Gore Engineering Associates, Inc. v. Arkansas Contractors Licensing Board*, 2011 Ark. App. 640.

---

[2]The same requirement applies to decisions of agencies that are not covered by the Administrative Procedure Act. *See, e.g.*, Ark. Code Ann. § 11-9-704(b)(5) (Repl. 2012) (Arkansas Workers' Compensation Commission).

SLIP OPINION

SLIP OPINION

A satisfactory specific finding of fact is

> a simple, straightforward statement of what happened. A statement of what the Board finds has happened; *not a statement that a witness, or witnesses, testified thus and so*. It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Wright v. American Transportation*, 18 Ark. App. 18, 21, 709 S.W.2d 107, 109 (1986) (emphasis added) (quoting *Whispering Pines Home for Senior Citizens v. Nicalek*, 333 N.E.2d 324 (Ind. Ct. App. 1975)); *see also Barnes, supra* (recitation of witness testimony is not a satisfactory finding of fact). A conclusory statement that does not detail or analyze the facts on which it is based is not sufficient. *Maez v. Director*, 2009 Ark. App. 661. Neither the circuit court nor this court may supply findings by weighing the evidence; that function lies with the administrative agency. *See Arkansas Savings & Loan Association Board v. Central Arkansas Savings & Loan Association*, 256 Ark. 846, 510 S.W.2d 872 (1974); *Arkansas State Board of Chiropractic Examiners v. Currie*, 2013 Ark. App. 612.[3] When an administrative agency fails to make findings on issues of fact, the courts do not decide the questions in the first instance; instead, the cause is remanded to the agency so that findings can be made. *Gore Engineering Associates, Inc., supra.*

---

[3]We are aware that the circuit court is allowed to take new evidence and, presumably, to make findings thereon in the limited instance of "alleged irregularities in procedure before the agency not shown in the record." *See* Ark. Code Ann. § 25-15-212(g). However, that is not what happened here; that statutory exception does not apply to the particular deficiencies in the Board's findings and conclusions that are detailed in the following paragraph of our opinion and that form the basis for our decision in this case.

Here, the Board's findings and conclusions are insufficient to allow a reviewing court to determine whether several issues were resolved in conformity with the law. Other than the findings that McGowan and Callicott agreed that Callicott would perform a survey for McGowan in exchange for $1000 and that the $1000 had been paid to Callicott, the order contains no clear and specific findings. The Board's statements reciting McGowan's "assert[ions]" clearly are not findings of fact regarding the subject matter of those assertions. *See Barnes*, *supra*; *Wright*, *supra*. Although the Board stated that Callicott did not dispute McGowan's assertions that the check had been cashed and that the survey had not been completed, the Board did not explain whether those assertions were admitted and the Board found the evidence credible, or whether the Board believed that Callicott's failure to appear at the hearing somehow required the Board to accept McGowan's assertions. *See Peters v. Doyle*, 2009 Ark. App. 722 ("finding" that leaves an ambiguity regarding the factual basis therefor or regarding agency's understanding of the law is insufficient). In any event, the Board made no comment at all regarding the truth or falsity of McGowan's "assert[ions]" that Callicott had failed to contact McGowan and failed to respond to McGowan's claimed attempts to contact Callicott. Nor did the Board make any findings regarding the nature or number of any such attempts by McGowan to contact Callicott. Additionally, the Board's decision is silent as to whether Callicott started the project or did any significant work on it and whether there was any agreement or understanding between landowner and surveyor regarding any time limitations within which the work was to be completed. Nor does the Board's order contain any findings to support its very conclusory statement, which essentially

tracks the general language of Arkansas Code Annotated section 17-48-205(a)(1)(E) (Supp. 2015), that Callicott refused to provide pertinent information requested by the Board's investigator; no mention is made regarding what information was requested by the Board or exactly how Callicott responded. *See* Ark. Code Ann. § 25-15-210(b)(2) (a finding set forth in statutory language must be accompanied by explicit statement of underlying facts in support). Finally, the Board did not explain how it reached the conclusion that Callicott's "conduct" violated the general rules and statutes cited by the Board or how it warranted revocation of his license, the most severe penalty available to the Board. *See Nesterenko v. Arkansas Board of Chiropractic Examiners*, 76 Ark. App. 561, 69 S.W.3d 459 (2002).[4]

Because the Board's order fails to detail what it found to have actually happened regarding several critical issues and fails to state how the facts led to its conclusions, we must reverse and remand for the Board to make specific findings and conclusions as required by the

---

[4]We appreciate the dissenting judges' concern that our court not unnecessarily elevate form over substance. However, in this case, their concern is misdirected. Here, it is the dissenting judges who are placing form over substance. They accept a number of the Board's statements as "findings of fact" because they are labeled as such by the Board and despite the lack of substance within those "findings." Of course, the label attached to written material should not control over the actual content thereof. *See Cagle Manufacturing & Steel, Inc. v. Patterson*, 309 Ark. 365, 830 S.W.2d 857 (1992) (agency's labeling a statement "finding of fact" not controlling; case remanded for findings); *Gore Engineering Associates, Inc.*, *supra* (same); *see also Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967) (trial court's labeling a document "decree" not determinative; status as decree depends on presence of certain essentials within the document); *Hinton v. Bethany Christian Services*, 2015 Ark. App. 301, 462 S.W.3d 361 (despite trial court's label of its order as one for "Permanent Guardianship," appellate court treated it as temporary in nature based on content in body of order); *Riddick v. Harris*, 2016 Ark. App. 426 (body of argument in brief controls over conclusory statement in argument heading).

SLIP OPINION

statute. In order that the appeal not be decided piecemeal, we do not address any of the remaining issues at this time. *Twin Rivers Health & Rehab, LLC v. Arkansas Health Services Permit Commission*, 2012 Ark. 15; *Sonic Drive-In v. Wade*, 36 Ark. App. 4, 816 S.W.2d 889 (1991).

Reversed and remanded.

GLADWIN, C.J., and WHITEAKER and HOOFMAN, JJ., agree.

HIXSON and BROWN, JJ., dissent.

**KENNETH S. HIXSON, Judge, dissenting.** Form over substance can be a good thing in general. Form over substance even has its place in legal jurisprudence. In fact, form over substance is sometimes necessary to protect our rights. However, where form over substance only serves to create more paper, causes unnecessary delays in justice, increases court dockets, and causes the parties to spend even more money in legal fees, form over substance should stand aside and allow the reviewing institution the opportunity to decide a case on its merits. In my opinion, this is such a case.

Among the purposes of requiring an administrative agency to issue findings of fact and conclusions of law is to facilitate judicial review and to aid the parties in planning for rehearings and judicial review. *See Voltage Vehicles v. Ark. Motor Vehicle Comm'n*, 2012 Ark. 386, 424 S.W.3d 281. A fair reading of the majority opinion implies that the Board herein completely ignored its responsibilities. That is not the case. Here, the Board issued eight findings of fact and three conclusions of law, and based on those findings and conclusions, it issued an order imposing a $1,000 civil penalty and revoked Callicott's surveyor's license. To

SLIP OPINION

show that the Board did not disregard nor neglect its responsibility to issue findings and conclusions, below is a verbatim excerpt from the Board's Order:

On the basis of the testimony, and other evidence presented during the hearing, the Board makes the following Findings of Fact, Conclusions of Law, and Order.

## FINDINGS OF FACT

F1.     At all times relevant to the complaint, the Respondent was a Professional Surveyor licensed by the Board, and the Board has jurisdiction over his conduct.

F2.     Complainant Charles McGowan has an interest in a parcel of land in Ouachita County.  McGowan desired to have the parcel boundaries marked on the ground, according to the survey plat and legal descriptions under which he held title.

F3.     McGowan engaged the Respondent to perform the desired work.

F4.     McGowan met the Respondent on the parcel on April 16, 2013, to discuss what work was to be done.  During that meeting, McGowan gave the Respondent a check for $1,000, the agreed price for the proposed survey work.

F5.     McGowan asserts that the check was cashed on April 19, 2013.  *The Respondent does not dispute this fact.*

F6.     McGowan asserts that the agreed work has never been completed. *The Respondent does not dispute that the agreed work has never been completed.*

F7.     McGowan asserts that the Respondent made no attempt to contact him, or explain the delay, or make other arrangements, nor did the Respondent respond to repeated attempts by McGowan to contact him from April 19, 2013, until the complaint was brought before the Board.

F8.     During the course of the investigation, the Respondent refused to provide pertinent information about the complaint that was requested by the Board's investigator.

## CONCLUSIONS OF LAW

C1.     The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public in violation of Arkansas Code Annotated § 17-48-205.

SLIP OPINION

C2.    The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of failing to faithfully serve the legitimate interest of his client, in violation of the preamble of the Rules of Professional Conduct.

C3.    The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of failing to provide information requested by the board as a result of a formal or informal complaint to the board, in violation of Arkansas Code Annotated § 17-48-205.

### ORDER

O1.    The Respondent is ordered to pay a civil penalty of One Thousand Dollars ($1,000) for the violations described in Paragraphs C1, C2, and C3 above. The total civil penalty must be received by the Board within fifty (50) days of the service of this Order.

O2.    For the violations described in Paragraphs C1, C2, and C3 above, the Professional Surveyor license of the Respondent is hereby revoked.

(Emphasis added.)

While these findings and conclusions could have been more detailed and articulate, the question is whether the findings and conclusions were sufficient to facilitate judicial review for the circuit court and the court of appeals to determine the basis for the Board's decision and whether the Board resolved the issues in conformity with the law.  It appears that these findings of fact and conclusions of law were sufficiently clear:

·    for the surveyor to file a meaningful petition for judicial review to the circuit court contending that the Board's decision was unsupported by substantial evidence;
·    for the circuit court to find that the Board erred in finding that a violation occurred and that the penalty was unduly harsh and reversing the Board's decision; and
·    for the parties to file their appellate briefs, making meaningful arguments to the court setting forth their respective positions, with neither party questioning the sufficiency of the Board's findings or conclusions.

Yet for some reason, according to the majority opinion *sua sponte*, these findings of fact and conclusions of law "are insufficient to allow [our] court to determine whether the issues were

11

resolved in conformity with the law" and "the Board's order fails to detail what it found to have actually happened regarding several critical issues and fails to state how the facts led to its conclusions." I simply disagree. When read as a whole, the Board determined that the surveyor was paid, did not complete his contracted job, and did not communicate with his client. Then, during the Board's investigation, the surveyor did not provide information requested by the Board, and as a result, the Board fined the surveyor $1,000 and revoked his license. In my opinion, when the record on appeal and the order are read together as a whole, the findings and conclusions are sufficient to allow and facilitate a judicial review.

There is a cost to form over substance. Could the Board have been more articulate? Could the Board's decision have been more detailed? Both are probably answered "yes." However, is the existing language used by the Board so insufficient that it prevents a meaningful judicial review? I think not. Our disposition sends this case back to the Board for more findings and more conclusions. Once the Board issues a new and improved order, then the surveyor will have to appeal the case back to the circuit court. Then the circuit court will re-review the new and improved order. Then, the losing party will again have to appeal this case back to this court. More money, more time, and a significant waste of judicial economy. More form over substance.

I would perform a judicial review and get to the merits of the case. I would affirm the finding that the surveyor violated the rules pertaining to professionalism to his client and failure to provide information to the Board. I would also affirm the fine. However, I would

reverse the revocation of Callicott's license as arbitrary and capricious, and remand to the Board to fashion a penalty less than revocation.

**WAYMOND M. BROWN, Judge, dissenting.** I strongly disagree with the majority's decision to reverse and remand for the Board to make specific findings of fact and conclusions of law, as the findings and conclusions are sufficiently clear to determine the basis for the Board's decision to revoke the surveyor's license of Callicott.

The majority correctly states that the Arkansas Administrative Procedure Act (APA) requires that an administrative adjudication be accompanied by specific findings of fact and conclusions of law. Ark. Code Ann. § 25-15-210 (Repl. 2014). The APA further states the following: 2

> (2) A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

The threshold question in a case brought to court from an administrative agency is whether the agency has provided concise and explicit findings of fact and conclusions of law, separately stated in its order. *Olsten Health Services, Inc. v. Arkansas Health Services Com'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000).

Here, the Board did just that. The findings of fact and conclusions of law were specifically and separately stated in the Order as follows:

### FINDINGS OF FACT

F1. At all times relevant to the complaint, the Respondent was a Professional Surveyor licensed by Board, and the Board has jurisdiction over his conduct.

13

F2. Complainant Charles McGowan has an interest in a parcel of land in Ouachita County. McGowan desired to have the parcel boundaries marked on the ground, according to the survey plat and legal description under which he held title.

F3. McGowan engaged the Respondent to perform the desired work.

F4. McGowan met the Respondent on the parcel on April 16, 2013, to discuss what work was to be done. During that meeting, McGowan gave the Respondent a check for $1000, the agreed price for the proposed survey work.

F5. McGowan asserts the check was cashed on April 19, 2013. The Respondent does not dispute this fact.

F6. McGowan asserts that the agreed work has never been completed. The Respondent does not dispute that the agreed work has never been completed.

F7. McGowan asserts that the Respondent made no attempt to contact him, or explain the delay, or make other arrangements, nor did the Respondent respond to repeated attempts by McGowan to contact him, from April 19, 2013 until the complaint was brought before the Board.

F8. During the course of the investigation, the Respondent refused to provide pertinent information about the complaint that was requested by the Board's investigator.

## CONCLUSIONS OF LAW

C1. The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public, in violation of Arkansas Code Annotated § 17-48-205.

C2. The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of failing to faithfully serve the legitimate interest of his client, in violation of the preamble of the Rules of Professional Conduct.

C3. The conduct of the Respondent, as set forth above in the Findings of Fact, constitutes one count of failing to provide information requested by the board as a result of a formal or informal complaint to the board, in violation of Arkansas Code Annotated § 17-48-205.

The Board's order complied with the requirements of the APA. The findings and conclusions are obvious. What more does the majority need the Board to find? The facts of the case are simple. Callicott was hired by McGowan to survey a parcel of land. McGowan paid Callicott $1000 to perform the work. Callicott failed to perform the work and provide the survey. Callicott did not communicate with McGowan at all over the course of 10 weeks, until the time that McGowan filed a complaint with the Board. Callicott failed to cooperate and provide necessary information to the Board throughout the investigation.

The majority contends that the order contains no clear and specific findings because of the use of the word "asserts." How much more clear and specific could the Board have been? The findings are listed under a bold heading in all capital letters titled 4

"**FINDINGS OF FACT**." It is not a far leap to understand that what the Board listed under this heading are indeed their findings of fact. The Board's unfortunate use of the word "asserts" in three of the eight enumerated findings of fact does not in any way disqualify them from being facts, as clearly intended by the Board, when it placed them under such a heading. The same is true for "**CONCLUSIONS OF LAW**."

The majority states that the Board's order fails to detail what it found to have actually happened. How is that possible? Even a blind man can see what happened here. Callicott did not perform the work he was paid to do. The findings of fact make that blatantly obvious. Are we really going to grind the wheels of justice to a screeching halt because of the majority's belief that the Board failed to use magical language in stating their findings of fact? Surely, this is not the outcome or application envisioned by the APA.

Furthermore the requirement that underlying facts supporting findings be concisely and explicitly stated is primarily for the benefit of reviewing courts. *Ark. Sav. & Loan Ass'n Bd. v. Central Ark. Sav. & Loan Ass'n*, 256 Ark. 846, 510 S.W.2d 872, 1974. In *Nesterenko v. Arkansas Bd. of Chiropractic Examiners*, this court reversed and remanded for more specific findings of fact, stating that without more specific findings, we are left to guess how and which part of the regulation the Board determined that appellant had violated. 76 Ark. App. 561, 69 S.W.3d 459 (2002). That is not the case here. We know the how and which because it is listed in the Board's order under the appropriate headings. There is no guess work to be done. Accordingly, upon 5 determining that the Board's findings of fact and conclusions of law are sufficient, I would affirm the Board's finding that Callicott violated the rules applicable to professional surveyors.

A party challenging an administrative action as arbitrary and capricious must prove that it was willful and unreasonable, without consideration and with a disregard of the facts or circumstances of the case. *Hester v. Ark. Prof'l Bail Bondsman Licensing Bd.,* 2011 Ark. App. 389, 383 S.W.3d 925. An agency's decision cannot be arbitrary and capricious when it is supported by substantial evidence. *Olsten*, 69 Ark. App. 313, 12 S.W.3d 656.

The Board, having found that Callicott violated multiple sections of Arkansas Code Annotated § 17-48-205, revoked his surveyor's license and fined him $1000. Because the Board had substantial evidence to support the findings and violations, the penalties that it imposed on Callicott cannot be arbitrary and capricious. Further, "administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures

than courts, to determine and analyze legal issues affecting their agencies." *Williams v. Ark. State Bd. of Physical Therapy*, 353 Ark. 778, 782, 120 S.W.3d 581, 584 (2003). The agency is better acquainted with the standards of conduct expected of professional surveyors. It is the agency, not this court, that can fully evaluate and appreciate the seriousness of the violations by those of the profession. Hence, it is the agency's prerogative to impose the penalty that it deems proper. 6

I would affirm.

*Leslie Rutledge*, Att'y Gen., by: *Sara Farris*, Ass't Att'y Gen., for appellant.

*Baker, Schulze, Murphy & Patterson*, by: *J.G. "Gerry" Schulze*, for appellee.