SLIP OPINION



Cite as 2015 Ark. App. 713

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-404

| | |
|---|---|
| ARKANSAS STATE HIGHWAY & TRANSPORTATION DEPARTMENT<br>APPELLANT | **Opinion Delivered** December 16, 2015 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. CV-14-1007] |
| RAM OUTDOOR ADVERTISING<br>APPELLEE | HONORABLE J. MICHAEL FITZHUGH, JUDGE |
| | REVERSED |

## BART F. VIRDEN, Judge

Appellee RAM Outdoor Advertising (RAM) received a conditional–use permit from the City of Fort Smith to convert an existing billboard along Interstate Highway 540 from a static display to a digital display. RAM then applied for a permit from appellant, the Arkansas State Highway & Transportation Department (the Department or AHTD), to convert the sign to an electronic message device (EMD). The Department denied the application, and RAM requested an administrative hearing before the Arkansas State Highway Commission (the agency). The hearing officer upheld the Department's decision, and RAM appealed to the Sebastian County Circuit Court. The circuit court reversed the agency's decision, and the Department has appealed to this court. We reverse the circuit court and affirm the agency's decision.



I. *Overview*

The 1965 Federal Highway Beautification Act (Federal Act) provides for the control of billboards in an effort to maintain natural beauty along American interstate and primary highway systems. 23 U.S.C. § 131 *et seq.* The federal law requires the states to provide "effective control" along interstate and primary highway systems as a condition of receiving all of each state's federal highway funds, or else the United States Secretary of Transportation will withhold ten percent of those funds. 23 U.S.C. § 131(b).

The Arkansas Highway Beautification Act, codified at Ark. Code Ann. § 27-74-101 *et seq.*, was enacted by Act 640 of 1967 to further the goals of the Federal Act and ensure continued funding for roads. *Ark. State Highway & Transp. Dep't v. Kidder*, 326 Ark. 595, 933 S.W.2d 794 (1996). Arkansas Code Annotated sections 27-74-203(a) and –211(b) (Repl. 2010) impose a duty on the Arkansas State Highway Commission to regulate the erection and maintenance of outdoor advertising devices and to adopt and promulgate regulations governing the issuance of permits for erecting outdoor advertising devices. The agency has promulgated and adopted Regulations for the Control of Outdoor Advertising on Arkansas Highways. The General Assembly has declared that the erection and maintenance of outdoor advertising devices shall be controlled in accordance with the terms of this chapter and regulations promulgated pursuant thereto, in order to protect the public interest; promote the public health, safety, and welfare; to preserve natural beauty; and to promote reasonable, orderly, and effective display of outdoor advertising in Arkansas. Ark. Code Ann. § 27-74-201(a) (Repl. 2010).

Arkansas Code Annotated section 27-74-204(a) (Repl. 2010) provides that nothing contained in this chapter shall prohibit the erection and maintenance of outdoor advertising signs, displays, and devices consistent with customary use within 660 feet of the nearest edge of the right-of-way of interstate, primary, and other state highways designated by the commission (1) within those areas which are zoned industrial or commercial under authority of the laws of this state, or (2) within those unzoned commercial or industrial areas which may be determined by agreement between the commission and the United States Secretary of Transportation. As set forth in Appendix 3 section (E) of the agency's regulations, the State of Arkansas and local political subdivisions shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes and that action in this regard will be accepted for the purposes of this agreement. The regulations define "commercial or industrial activities" as those activities generally recognized as commercial or industrial by public zoning authorities in Arkansas, except that transient or temporary activities and activities not visible from the main traveled way shall not be considered commercial or industrial. 001-00-005-7 Ark. Code R. 3 § 1(F)(3) & (4) (Weil 2008).

Section 7(B)(8) of the revised regulations for EMDs provides that a sign owner may modify existing, legal, conforming structures to an EMD only after filing an application and receiving approval by the Department. RAM applied for such a permit, and the Department denied the application because (1) the sign site is not located in a commercial/industrial area; (2) the property was zoned industrial, and, although three billboards were built over thirty years ago, there has been no industrial development of the property; (3) the property is a

forested tract of land located in a floodplain, where there has been no development, and no development is likely to occur; and (4) the Sebastian County Assessor's Office lists the landowner as "Fort Smith Riverfront/Jack White," but the application does not have a landowner's permission statement.[1]

Following the Department's denial of its application, RAM requested an administrative hearing before the Arkansas State Highway Commission, which appointed a hearing officer.

## II. *Administrative Hearing*

Craig Roberts, RAM's managing partner, testified that RAM's proposed sign site is in an area that the City of Fort Smith has zoned Industrial Light.[2] Roberts stated that he had observed ATV (all-terrain vehicle) activity on the land—primarily, on weekends—as recently as a few months prior. He stated that there was also a front-end loader parked at the site and that he had seen the excavator loading dirt for construction projects. Roberts said that the front-end loader moved dirt eight or nine times out of ten when it was not raining.

Brandy Campbell, beautification coordinator with the Department, testified that he recommended that RAM's application be denied because the sign was non-conforming, meaning that it would not qualify for a new permit in its present state. He testified that when there is doubt about the legitimacy of zoning by the city, the Department uses an unzoned

---

[1] Counsel for the AHTD conceded at the administrative hearing that title to the property was not in dispute.

[2] City of Fort Smith Ordinance No. 15-13 (Fort Smith, Ark., Code § 27-704-4 (1976)).

test to determine whether the zoning is consistent with the activity occurring there. Campbell, who described the proposed site as "a forested area," testified that there was absolutely no industrial activity that one could observe from Interstate 540 and that the nearest commercial activity was 1.3 miles south of the site. Campbell also testified that he had spoken with the operator of the front-end loader and was told that there was no on-site office.

Jeff Ingram, an administrator at the Department and head of the beautification section, testified that the purpose of the Beautification Act is to limit signs to commercial or industrial areas. He said that, applying the unzoned test, there was no industrial development within 600 feet of the proposed site and no infrastructure. Ingram stated that there were no recognizable structures that would lead one to conclude that there was a dirt pit or a mining operation on the property as one is traveling on Interstate 540. He testified that the extent of the dirt-pit operation was one man with a front-end loader who "occasionally" got phone calls and loaded a dump truck. He described the site, which he clarified is in a floodway, as "nothing but vacant land growing up in trees and weeds." Ingram stated that there was a ten-year history of no development and that no development was likely to occur over the next ten years. Ingram further testified that the city had a right to zone the property as industrial but, for purposes of the Beautification Act, it did not meet the expectations of the Federal Highway Administration.

At the conclusion of the hearing, the hearing officer upheld the Department's decision. The hearing officer found

(1) that RAM's permit application did not comply with regulations for EMDs;

(2) that the Department was not bound by the zoning classifications or decisions of municipalities;

(3) that the activity within the zoned area did not meet the definition of "industrial" activity set forth in the regulations; and

(4) that the regulations have been deemed constitutional by the Arkansas Supreme Court and do not impermissibly restrict certain speech.[3]

RAM then appealed to the circuit court, which reversed the agency's decision. The Department brings this appeal to our court.

### III. *Argument*

RAM, as the challenging party, argues that the Department did not give due deference to the City of Fort Smith's zoning decision and that there was no substantial evidence that the zoning was primarily to allow billboards, as was the case in *Files v. Arkansas State Highway & Transportation Department*, 325 Ark. 291, 925 S.W.2d 404 (1996). According to RAM, the Department ignored the General Assembly's liberal grant of authority to municipalities regarding construction of the Arkansas Highway Beautification Act.[4] RAM further contends that the Department was unable to point to any authority for its application of an unzoned test for areas that are in fact zoned industrial or commercial, making its decision both arbitrary and capricious.

---

[3]*See Yarbrough v. Ark. State Highway Comm'n*, 260 Ark. 161, 539 S.W.2d 419 (1976).

[4]Arkansas Code Annotated section 14-56-402 (Repl. 1998) provides that cities of the first and second class and incorporated towns shall have the power to adopt and enforce plans for the coordinated, adjusted, and harmonious development of the municipality and its environs.



IV. *Standard of Review*

Review of administrative agency decisions, by both the circuit court and the appellate courts, is limited in scope. *Ark. State Highway & Transp. Dep't v. Lamar Advantage Holding Co.*, 2011 Ark. 195, 381 S.W.3d 787. The standard of review to be used by both courts is whether there is substantial evidence to support the agency's findings. *Id*. The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Id*. When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id*.

Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture. *Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001). The challenging party has the burden of proving an absence of substantial evidence. *Id*. To determine whether a decision is supported by substantial evidence, the record is reviewed to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Ark. State Racing Comm'n v. Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001). When reviewing the evidence, this court gives it its strongest probative force in favor of the agency. *Id*. The issue is not whether the evidence supports a contrary finding, but whether it supports the finding that

was made. *Id.* If there is substantial evidence to support even one basis for denial, this court must affirm the agency's decision. *See, e.g.*, *Lamar*, *supra*. It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Ward*, *supra*. We review issues of statutory interpretation de novo, however, the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Lamar*, *supra*.

## V. *Discussion*

In *Files*, *supra*, the appellant petitioned for judicial review of the AHTD's denial of his application for a billboard permit. The circuit court affirmed the agency's decision, and the appellant appealed to the supreme court, which held (1) that the Department could look behind a city's zoning ordinance to examine the motivation behind the zoning decision and (2) that the Department's determination that land was annexed and zoned commercial for the sole purpose of erecting billboards—contrary to the policies of the federal and state laws—was supported by substantial evidence. While we agree that this case does not involve "sham zoning" and that there was no evidence that the proposed site was zoned industrial for the sole purpose of erecting billboards, *Files* stands for the proposition that the Department has authority to question the validity of zoning decisions. Here, the Department questioned the validity of Fort Smith's zoning because it did not comport with the activities occurring there.

The Arkansas Highway Beautification Act is remedial in nature and must be broadly construed so as to effectuate the purpose sought to be accomplished by its enactment. *Files*,

SLIP OPINION

*supra.* The *Files* court cited with approval *Alper v. Nevada*, 96 Nev. 925, 621 P.2d 492 (1980), which held that an inquiry into the status of billboard areas "should not be limited to a review of the face of a zoning ordinance"; rather, the inquiry should include "reference to actual[,] as well as contemplated[,] land uses." *Files*, 325 Ark. at 298, 925 S.W.2d at 408. Our supreme court agreed with the analysis of the Nevada Supreme Court and held that the AHTD appropriately examined the propriety of Brinkley's zoning ordinance. Our supreme court concluded that

> [s]ome deference must be given to the Department's interpretation of state and federal regulations in this area. The Department's interpretation of its authority enables it to review limited commercial zoning decisions relating to outdoor advertising to determine validity. This fosters the purposes of the Highway Beautification Act and assures compliance with federal law. The General Assembly certainly contemplated that the Department would regulate outdoor advertising in accordance with state and federal law.

*Files*, 325 Ark. at 298, 925 S.W.2d at 408–09.

Considering the deference this court gives agencies in the interpretation of their regulations and, given our supreme court's conclusion in *Files*, we hold that substantial evidence from the administrative hearing supports the agency's decision upholding the Department's denial of RAM's application.

Moreover, we note that the agency agreed with the Department's denial of RAM's application for a permit based, in part, on a determination that the activity in the zoned area was not "industrial" according to the regulations. RAM does not challenge this finding on appeal. While there is no bright-line standard for what constitutes industrial or commercial activity, the regulations do provide what activity is *not* considered "industrial" or

9

"commercial." There was evidence from which the agency could determine that the activity at RAM's proposed sign site was transitory or temporary in nature and that the activity was not visible from Interstate 540. Because we hold that there was substantial evidence to support the agency's decision, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Capitol Zoning Dist. Comm'n v. Cowan*, 2012 Ark. App. 619, 429 S.W.3d 267. We do not address RAM's other arguments because substantial evidence supporting only one basis for denial is sufficient to affirm. *See Lamar, supra*.

Accordingly, we reverse the circuit court and affirm the administrative agency's decision.

Reversed.

HARRISON and WHITEAKER, JJ., agree.

*Rita S. Looney*, Chief Counsel, by: *William L. Wharton*, Staff Attorney, for appellant.

*Walters, Gaston, Allison & Parker, Attorney as Law*, by: *Troy Gaston*, for appellee.